UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JOHN WILLIAM NICHOLS** and
**CRYSTAL JEAN NICHOLS**,

Debtors.

Case No. **14-60974-7**

## MEMORANDUM OF DECISION

At Butte in said District this 12th day of January, 2015.

Pending in this Chapter 7 bankruptcy is the Trustee's Objection (Document No. 26) to Debtors' claim of exemption in six (6) annuity contracts. A hearing on the Trustee's Objection was held at Missoula on December 19, 2014. Debtors John Nichols ("John") and Crystal Nichols ("Crystal") filed responses and both appeared and testified, represented by attorney Nik G. Geranios of Missoula. The Trustee Christy L. Brandon appeared. Exhibits ("Ex.") A, B, C, D, 1, and 2 were admitted into evidence by stipulation of counsel. At the Trustee's request, and without objection, the Court took judicial notice of the Debtors' Schedules I, J, and Debtors' Statement of Financial Affairs ("SOFA").[1] At the conclusion of the parties' cases-in-chief the Court heard oral argument from counsel, after which the Court deemed the matter submitted and took it under advisement. After review of the record and applicable law, for the reasons set forth below and in the exercise of its discretion under MONT. CODE ANN. ("MCA") § 33-15-514(1)(c), this Court overrules the Trustee's Objection and allows Debtors' exemption in full "after due

---

[1]Ex. A consists of Schedules I and J.

1

regard for the reasonable requirements of the judgment debtor[.]"

This Court has jurisdiction of this Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a). The Trustee's Objection to Debtors' claim of exemptions is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Memorandum of Decision includes the Court's findings of fact and conclusion of law.

## FACTS

John and Crystal Nichols are married and live together in a house they own at 127 3rd Ave SW in Ronan, Montana. Crystal testified that she controls the family finances and they try to split their living expenses, but on cross examination by her counsel she clarified that all the Debtors' income goes into one account from which their expenses get paid together and that she is dependent on John's income for her rent[2] and expenses. Crystal was employed by Valley Bank in Ronan until sometime in 2014, when her full-time employment ended. She testified that she took early retirement in 2014 because of back surgery and knee problems, but currently she is employed at Valley Bank on a temporary basis replacing someone on maternity leave. Crystal began receiving social security benefits in November of 2014; she testified that she also received a disability payment from AFLAC in the amount of approximately $1,394.

John testified that he retired 13 years ago, but that he was employed during a part of 2013 as a cook. He testified that he has not been told by a doctor that he cannot work, but he uses a portable oxygen tank, and that he is not able to earn income other than as a driver. Crystal testified that John's medical condition steadily is requiring additional care; he is currently being examined by the United States Veterans' Administration ("VA") for possible dementia.

---

[2]Debtors pay no rent, but they have a mortgage payment of $818.00 per month. Ex. A.

John inherited six annuity contracts from his mother, payable by Ameriprise Financial. The original total monthly amount of the six contracts was $1,442.98. However, John testified that one of the annuity contracts has lapsed, Ex. B[3], leaving five annuity contracts which pay John a monthly total of $1,203.64, after the withholding of taxes. Crystal testified that she thought the monthly total from the five annuity contracts after taxes was approximately $1,119.50.

John testified that, of the five remaining annuity contracts, one has a payment that will continue only for his lifetime, after which it will lapse, and the three other contracts expire in January of 2016. Ex. C mostly corroborates John's testimony.[4] Before payments under one of the annuity contracts ended, he testified, his total income was approximately $3,000 per month from social security, VA benefits and the annuity contracts.

Debtors filed their voluntary Chapter 7 petition, Schedules and SOFA on August 20, 2014, listing assets totaling $69,455.83 and liabilities totaling $320,571.67. Debtors' Schedule A lists their residence at 127 3rd Ave SW in "Ronana" [sic], MT, with a value of $0 and encumbered by a secured claim in the amount of $154,631.14. Schedule E lists a joint priority

---

[3]Ex. B is undated, and refers to the cancellation of an annuity payment to John in the monthly amount of $239.34, by Ameriprise Financial after it discovered that the monthly payment should have continued only until the end of the period certain, June 18, 2010.

[4]Ex. C describes an annuity with a monthly payment of $193.83 for a 15 year term certain after February 15, 2001, ending in 2016; a second annuity for $277.21 per month also with a 15 year term certain ending in February 2016; an third annuity for $287.51 per month for a 20 year term certain ending after September 5, 2017; a fourth annuity for $293.28 for the lifetime of the annuitant; and a fifth annuity on the last page for $205.81 per month for a 15 year term certain ending in February 2016. These five payments total $1,203.64.

claim for income taxes owed to the IRS in the amount of $1,436.[5] Schedule F lists unsecured nonpriority claims in the total amount of $116,497.03, most of which are medical debts.

Schedule I states that John is retired and Crystal is unemployed. Schedule I lists Debtors' total monthly income in the amount of $3,025.81, all of which is attributed to John, and $0 to Crystal. Crystal testified that her social security benefits commenced post-petition.[6] John's monthly income comes from social security ($1,428.90), VA - Disability ($1,442.98) and $1,442.98 from the annuity contracts[7]. The evidence admitted at the hearing reduced the monthly annuity total to $1,203.64, which is $239.34 less than the annuity income stated on Schedule I. At Debtors' SOFA item 1, their income from employment in year 2014 YTD is stated as $12,315.00, which Crystal testified is attributable to her former full-time employment at Valley Bank.

Schedule J lists Debtors' expenses in a monthly total of $3,021.85, which was $3.96 less than their monthly income total on Schedule I. Debtors' expenses consist of a mortgage ($818); home maintenance, repair and upkeep ($75); electricity and gas ($175); water, sewer and garbage collection ($75); telephones, internet, satellite and cable ($144); food and housekeeping supplies ($370); personal care products and services ($30); medical and dental ($250); transportation ($240); $0 for entertainment; $0 for charitable contributions and religious donations; life insurance ($14); health insurance ($458.02); vehicle insurance ($72.83); car payment ($200);

---

[5]Under questioning by the Court, it came out that Debtors' tax refund was retained by the IRS for payment of taxes.

[6]The amount of Crystal's social security benefits is not in evidence.

[7]Schedule I lists John's annuity income as "Spendthrift Trust."

4

student loan payment ($100).[8]  The Trustee admitted at the hearing that the Debtors' monthly expenses are reasonable.

Crystal testified that they rely on all of John's annuity income to pay their living expenses.  Asked about their expenses on Schedule J on cross examination, Crystal testified that their mortgage and insurance expenses increased after the date of filing of their bankruptcy petition.  They enrolled in budget billing and reduced their gas and electric bill to $135 per month.  She testified that their $370 monthly expense for food and housekeeping no longer is accurate, and that they are spending more on grocery bills now.  Their monthly vehicle insurance expense increased to $82.   She testified that their $240 monthly transportation expense does not include anything for maintenance or tires.  Recently, she testified, she had to replace a car battery for $350.  Their vehicle has an oil leak and a transmission fluid leak, and has 140,000 miles on it.

Crystal testified that her health insurance is through COBRA, which ends in December of 2015.  Her health insurance has a $1,500 deductible and a $6,000 out of pocket limit.  She is not old enough to qualify for Medicare.

Asked about the $250 monthly medical expense, Crystal testified that it depends on John's health, but that he is requiring more care now.  John's medical care is covered by the VA.  However, Crystal testified that he is covered only if she takes him to the VA clinic in Helena, where the VA occasionally may cover their hotel expenses, but does not reimburse them for their gasoline and meal expenses.

As for her employment, Crystal testified that she has not been able to find full-time work in the small town where she lives, and she currently is filling in at Valley Bank on a temporary

---

[8]Crystal testified that their student loan debt was put on deferral until December of 2014.

5

basis for another's maternity leave. Because of John's medical condition, she testified that she may have to stay home to look after him.

The Trustee filed her Objection to John's claim of exemption in the six annuity contracts on October 10, 2014. The Trustee objected that no spendthrift trust exists because no written trust agreement signed by John's mother exists creating such a trust, so the annuity contracts are property of the estate. As for the $1,442.98 per month in total annuity benefits, the Trustee concedes that § 33-15-514(1)(b) allows John an exemption in the annuity contracts, but she argues that the exemption is limited to a total of $250 per month. The Trustee argues that § 33-15-514(1)(c) is not applicable because the annuity contracts are property of the estate; the estate is not a judgment creditor seeking amounts subject to execution, to which § 33-15-514(1)(c) applies.

Alternatively, the Trustee argues that it is not just or proper for the Court to restrict the estate's interest in the six annuity contracts, other than the $250 per month, which is exempt under § 33-15-514(1)(b), because John's total monthly income from social security and veteran's disability benefits is more than his half of the household expenses of $1,510.93 shown by Schedule J. No "reasonable requirement" exist for the Debtors to justify a restriction in the estate's interest. At the hearing the Trustee argued that the policy and purpose of Montana's exemption statutes require that exemptions should not exceed amounts necessary for a debtor's support. The Trustee further argued that the evidence on SOFA item 1 of Crystal's 2014 income shows that she is not dependent on John's income and that the Debtors' income approximately equal their expenses if the expenses are divided equally between the Debtors.

The Debtors filed responses in opposition to the Trustee's Objection. Debtors' amended

response (Doc. 35) argues that the entire total of the annuity contracts are exempt under § 33-15-514(1)(c) because Debtors are dependent on the annuity income stream for medical care and other necessities, and Article XIII, Section 5 of the Montana Constitution and case law require that exemption statutes be liberally construed.[9]  In closing argument, Debtors' counsel argued that this Court has discretion under § 33-15-514(1)(c) under its decision in *In re Prevost*, 19 Mont. B.R. 482 (Bankr. D. Mont. 2002), to determine excess amounts of annuities which are just and proper, after due regard for the reasonable requirements of the judgment debtor and the debtor's family.  Debtors contend that Crystal does not have full-time employment now and her temporary employment will end.  They argue that:  the entire amount of the five remaining annuity contracts should be exempt as reasonably necessary to pay their expenses; most of the annuity contracts will terminate beginning in January of 2016; and loss of the annuity income will have a significant adverse effect on the Debtors.

## DISCUSSION

The evidence admitted at the hearing clarified that only five of John's six annuity contracts remain in payment, after Ameriprise Financial cancelled payment on one of them.  Ex. B.  As a result of the loss of one of the annuity payments in the amount of $239.34, the small $3.96 monthly surplus of Debtors' income shown on Schedule J over their expenses no longer exists.

Rule 4003(c), F.R.B.P., provides that in any hearing under said rule involving an objection to a claim of exemption, the objecting party has the burden of proving that the

---

[9]At the hearing Debtors' counsel clarified that they abandon their argument that the annuity contracts are not property of the estate because they are in the nature of a spendthrift trust and which they omitted in their amended response.

7

exemption is not properly claimed. The Trustee, as the objecting party, has the burden of proof. *Prevost*, 12 Mont. B.R. at 483-84. The lack of evidence regarding the amount of income from Crystal's temporary employment and her social security income weighs against the Trustee as the party with the burden. The evidence does show that Debtors' financial condition has worsened based on the loss of one annuity contract. Crystal's uncontroverted testimony establishes that John is requiring more care, which generates expenses for gasoline, hotels, meals and maintenance for their used high-mileage vehicle, not accounted for on Schedule I.

The Trustee admitted that Debtors' expenses on Schedule J are reasonable. They list $0 for entertainment/recreational expense and $0 for charitable contributions. No evidence exists in the record suggesting that Debtors' expenses are in any way extravagant, excessive or unreasonable, even with the additional expenses resulting from John's medical care and their increased expense for groceries, insurance, and transportation. In short, even with the entire amount of the five unexpired annuity contracts the evidence shows that the Debtors' expenses exceed their income.

At issue in this case is whether § 33-15-514(1)(c) applies and gives this Court discretion to consider Debtors' reasonable requirements, and if it does, how the Court should exercise its discretion. Section 33-15-514 was construed by this Court in *Prevost*, 19 Mont. B.R. at 486-87. This Court is unable to locate any decision after *Prevost* which construes § 33-15-514, so *Prevost* continues to state the rule in this district.

*Prevost* summarizes the exemption process as follows:

> Section 522(b)(2)(A) allows a debtor to exempt from property of the estate property that is exempt under federal, state or local exemption law "that is applicable on the date of the filing of the petition at the place in which the

debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition." It is well established that exemptions are determined as of the petition date. *In re Reaves*, 256 B.R. 306, 311 (9th Cir. BAP 2000); *In re Smith*, 14 Mont. B.R. 218, 224 (Bankr. Mont. 1995).

Pursuant to 11 U.S.C. § 522(b)(2)(A), Montana has opted out of the federal exemption scheme by means of Mont. Code Ann. § 31-2-106.[10] *In re Schmitz*, 16 Mont. B.R. 512, 515 (Bankr. Montana 1998); *In re Mackenzie*, 16 Mont. B.R. 338, 340 (Bankr. Mont. 1998). Thus, this Court looks to Montana state law rather than federal law, or New York case law, to determine the allowance of the Debtor's exemption of the structured settlement with Safeco. *In re Schmitz*, 16 Mont. B.R. at 515; *In re Loeb*, 12 Mont. B.R. 524, 527 (Bankr. Mont. 1993).

Exemption statutes are to be liberally construed in favor of the claimant. *In re Schmitz*, 16 Mont. B.R. at 515; *In re Mackenzie*, 16 Mont. B.R. at 343; *Glass v. Hitt* (*In re Glass*), 60 F.3d 565, 570 (9th Cir. 1995).

*Prevost*, 19 Mont. B.R. at 485.

The Trustee argues that this Court should not apply § 33-15-514(1)(c) because the Trustee is not a judgment creditor, as provided in subsection 33-15-514(1)(c), but rather is simply administering property of the estate. This argument misapprehends the fundamental structure by which exemptions are claimed in bankruptcy. The United States Supreme Court explained:

> When a debtor files a bankruptcy petition, all of his property becomes property of a bankruptcy estate. See 11 U.S.C. § 541. The Code, however, allows the debtor to prevent the distribution of certain property by claiming it as exempt. Section 522(b) allowed Davis to choose the exemptions afforded by state law or the federal exemptions listed in § 522(d).

*Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The

---

[10]Section 31-2-106 provides in pertinent part: "Exempt Property – bankruptcy proceeding: An individual may not exempt from the property of the estate in any bankruptcy proceeding the property specified in 11 U.S.C. § 522(d). An individual may exempt from the property of the estate in any bankruptcy proceeding: (1) that property exempt from execution of judgment as provided in . . . 33-15-514 . . . ."

Trustee suggests that § 33-15-514(1)(c) requires different treatment for the Trustee because she is not a judgment creditor. This suggestions ignores the specific provisions of Montana's statute governing exempt property in bankruptcy proceedings, all of which starts out as property of the estate under *Taylor*. Section 31-2-106 allows an individual in bankruptcy to exempt from execution of judgment that property identified in § 33-15-514. As this Court noted in *Prevost*, § 33-15-514 "is specifically listed among the statutes based upon which an individual may exempt property from the estate in a bankruptcy proceeding at MCA § 31-2-106(1)." *Prevost*, 19 Mont. B.R. at 486.

The Trustee argues that she is not acting as a judgment creditor, but rather simply is administering property of the estate. In fact, under 11 U.S.C. § 544(a) the Trustee's "strong arm" powers includes that of a creditor with a judicial lien. More importantly, however, the Debtors have the rights, pursuant to § 31-2-106(1), to exempt the annuities as provided under § 33-15-514 as they may exempt the annuities from execution by a judgment creditor. *Prevost*, 19 Mont. B.R. at 486. The fact that the Trustee seeks to administer the annuities as property of the estate requires no different analysis than it would with respect to Debtors' homestead exemption or their vehicle and personal property exemptions claimed under Title 25, MCA, all of which also are property of the estate subject to exemption. *Taylor v. Freeland & Kronz*, 503 U.S. at 642.

Section 33-15-514 provides:

> Exemption from execution of proceeds of annuity contracts -- assignability of rights. (1) The benefits, rights, privileges, and options that under any annuity contract are due or prospectively due the annuitant may not be subject to execution, the annuitant may not be compelled to exercise any such rights, powers, or options, and creditors may not be allowed to interfere with or terminate the contract, except:

\* \* \* \*

>   (b) the total exemption of benefits presently due and payable to any annuitant periodically or at stated times under all annuity contracts under which the person is an annuitant may not at any time exceed $250 per month for the length of time represented by the installments and the periodic payments in excess of $350 per month must be subject to garnishee execution;

>   (c) if the total benefits presently due and payable to any annuitant under all annuity contracts under which the person is an annuitant at any time exceed payment at the rate of $350 a month, then the court may order the annuitant to pay to a judgment creditor or apply on the judgment, in installments, the portion of the excess benefits that appear to the court to be just and proper, after due regard for the reasonable requirements of the judgment debtor and the debtor's family, if dependent upon the debtor, as well as any payments required to be made by the annuitant to other creditors under prior court orders.

§ 33-15-514; *See, Prevost*, 19 Mont. B.R. at 486-87.

In *Prevost* this Court wrote:

> Under the liberal policy of allowing exemptions, the Debtor under MCA § 33-15-514(1)(b) is entitled to exempt the right to receive annuity payments not exceeding $250 per month over the length of time during which the payments will be made. Further, under MCA § 33-15-514(1)(b), a safe-harbor provision protects the monthly payment between $250 and $350, as only those payments that exceed $350 per month are subject to a garnishee's execution. Furthermore to the extent the monthly payments exceed $350 per month but are necessary to meet the reasonable requirements of the Debtor and Debtor's dependents, the court may limit the amount payable to a trustee or creditor.

*Prevost*, 19 Mont. B.R. at 487.

The Trustee's argument that John's exemption in the annuity contracts is limited to $250 a month ignores the safe-harbor provision this Court found in § 33-15-514(1)(b) in *Prevost*, which protects the monthly payment up to $350, with only those payments exceeding $350 per month subject to a garnishee's execution pursuant to § 33-15-514(1)(c). 19 Mont. B.R. at 487.

The Court sees no reason to depart from its *Prevost* analysis finding a safe-harbor provision up to $350 a month.

Turning to § 33-15-514(1)(c), this Court has the discretion to order the annuitant to pay the Trustee the portion of the annuity payments exceeding $350 a month "that appear to the court to be just and proper, after due regard for the reasonable requirements of the judgment debtor and the debtor's family, if dependent on the debtor . . . ." MCA § 33-15-514(1)(c); *Prevost*, 19 Mont. B.R. at 487.

After consideration of the evidence in the record, this Court finds and concludes that the reasonable requirements of John and his spouse compel the Court to exercise its discretion by exempting all of the annuity payments above $350 per month under § 33-15-514(1)(c). Debtors' Schedules I and J show that, after expiration of one annuity contract, their expenses on the petition date exceed their income even with the income from the five remaining annuity contracts. The Trustee admitted that the Debtors' expenses are reasonable. The evidence shows that the Debtors' expenses are understated, and are increasing as John's medical condition worsens and Debtors incur expenses traveling to the VA clinic in Helena for John's treatment.

No evidence in the record of the amounts earned from Crystal's retirement or income from temporary employment. That lack of evidence weighs against the Trustee as the party with the burden of proving that the exemption is not properly claimed. *Prevost*, 19 Mont. B.R. at 483-84.

The Trustee argues that Crystal's income from 2014 shown on the SOFA item 1 shows that she has the ability to pay her half of their expenses. However, no evidence exists in the record that the Debtors each pay their own expenses. On the contrary, Crystal testified that their

income goes into one account and they pay their expenses together out of the same account. The evidence is uncontroverted that the Debtors live together and that Crystal was no longer a full-time employee when Debtors filed their bankruptcy petition.

The Trustee's suggestion that John's annuity income is not needed to pay Crystal's expenses ignores the evidence that they pay their expenses together and also ignores their statutory duties as husband and wife to support each other out of their property and labor. MONT. CODE ANN. § 40-2-102.

The Debtors' financial prospects are bleak. Even with all of the income from the five remaining annuity contracts, the evidence suggests that their monthly expenses exceed their income. Payments under three of the annuity contracts will cease in February 2016, and payments under a fourth will cease in September 2017. If the Court were to disallow or reduce John's claim of exemptions in the five remaining annuity contracts, the evidence shows that the result would be a hardship to the Debtors which would not be, in the Court's view, just and proper compared with the limited distribution to creditors from such a recovery. John's medical condition, and its effect on the Debtors' finances, persuade the Court that for the remaining duration of payments under the five annuity contracts, the Court's discretion is best exercised by allowing Debtors' claim of exemption as filed.

In conclusion, after due regard for the reasonable requirements of John and his family, this Court finds and concludes under § 33-15-514(1)(b) and (c) that the entire amount of John's five remaining annuity contracts should be exempt.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 7 bankruptcy case under 28 U.S.C. §

13

1334(a).

2. The Trustee's Objection to Debtors' claim of exemptions is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

3. The Court deems it appropriate in the exercise of its discretion under § 33-15-514(1)(c), after regard for the reasonable requirements of the Debtor John Nichols and his family, for the entire amount of John's five remaining annuity contracts to be exempt.

**IT IS ORDERED** a separate Order shall be entered overruling the Trustee's Objection to Debtors' Claim of Exemption (Doc. 26).

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana